# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. 1:21-cr-255 |
| | ) |
| Plaintiff, | ) Judge J. Philip Calabrese |
| | ) |
| v. | ) Magistrate Judge |
| | ) Jonathan D. Greenberg |
| SHEMARR KYLE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## OPINION AND ORDER

Defendant Shemarr Kyle moves to suppress evidence the police found after a search of his car in the parking lot of a suburban hotel. (ECF No. 19.) In response, the United States maintains that the search was lawful because (1) the police had probable cause for the search (ECF No. 23, PageID #104–06); and (2) the search was a valid inventory search conducted pursuant to the police department's towing policy (ECF No 29). Following an evidentiary hearing on August 6, 2021, and after hearing arguments from counsel, the issue is ripe for decision. Based on the evidence in the record, and for the reasons more fully explained below, the Court **GRANTS** the motion.

## FINDINGS OF FACT

Officer John Toth of the Westlake Police Department testified at the suppression hearing that he was on patrol on the morning of October 4, 2020 in the vicinity of the Sonesta Suites hotel on Clemens Road in Westlake, Ohio, a wealthier suburb on the outskirts of Cleveland. (The events at issue also involve an Officer

Robert Toth; unless otherwise noted, all references to Officer Toth refer to Officer John Toth.) Because this location is just off the interstate highway, Officer Toth frequently patrols nearby parking lots and runs the license plates of vehicles parked there. On the morning of October 4, Officer Toth observed an Audi Q5 with a bullet hole in the hood parked in the lot at the Sonesta Suites and ran its license plate through the department's law enforcement automated data system, known as LEADS—a Statewide database for law enforcement.

As a result of the license plate check, Officer Toth learned that the vehicle was registered to Shemarr Kyle, who had several active misdemeanor and felony warrants for his arrest, one of which a neighboring municipality had issued. Officer Toth also knew that Mr. Kyle was on parole following a conviction in State court. LEADS identified Mr. Kyle as armed and dangerous. Officer Toth called the police dispatcher in the neighboring municipality, who told him that that city would take Mr. Kyle into custody if apprehended.

### A. Surveillance and Arrest

Officer Toth parked at a nearby business across the street and surveilled the Audi for approximately forty-five minutes. During that time, Officer Toth observed the lights on the Audi blink three to four times, indicating to him that someone was repeatedly locking the car from a nearby position with a key fob to protect its contents.

Then, Officer Toth saw a man, whom he identified as Mr. Kyle from his driver's license photo, exit the hotel, unlock the vehicle, and walk toward it. Officer Toth saw Mr. Kyle open the driver's side door and get something from the car before closing the

2

door and walking away. In all, Mr. Kyle was in his vehicle for approximately one minute. By his own admission, Officer Toth did not know what Mr. Kyle did inside the vehicle and had no suspicion regarding what Mr. Kyle may have been doing in the vehicle.

Officer Toth drove across the street, exited his vehicle, unholstered his weapon, and pointed it in Mr. Kyle's direction. He ordered Mr. Kyle to the ground. Mr. Kyle hesitated for a few seconds and looked to his left and right before Officer Toth gave his K9 partner, Timmy, the command to bark to signal to Mr. Kyle that, if he fled, Timmy would bite him. Mr. Kyle eventually complied with Officer Toth's command and lay on the ground about fifteen or twenty feet away from his vehicle. Officer Toth placed Mr. Kyle in handcuffs. At this point, according to his testimony, Officer Toth smelled the odor of raw and burnt marijuana as well as alcohol on Mr. Kyle, who said that he went his car to retrieve his Black 'n Mild cigars. Officer Toth read Mr. Kyle his rights and advised him that he was under arrest. Officers performed a pat-down search of Mr. Kyle, which found no weapons or marijuana, but turned up two or three MDMA (ecstasy) pills.

Approximately two minutes after Mr. Kyle's arrest, Officers Robert Toth, Lea, and Jasinsky arrived on the scene as backup. Officer Robert Toth's dashboard camera captured the remainder of the encounter.

B. The Search

When the additional officers arrived, they immediately placed Mr. Kyle in a patrol car to secure him and to prevent him from escaping. Officer John Toth then can be heard on the video from the dashboard camera saying that he wants to "look

3

in the car to see if there is anything illegal." Mr. Kyle immediately objects and asks the officers how they could legally search his car. Officer Robert Toth responded, "Because you went into the car." Officer John Toth initially testified that he decided to search Mr. Kyle's vehicle because Mr. Kyle smelled like raw and burnt marijuana and had alcohol on his breath. Only when prompted, and as an afterthought, did he add that an inventory search before towing was another reason for the search of the vehicle. Although Officer John Toth knew that Mr. Kyle was on parole, he did not know whether a parolee has a lesser expectation of privacy in his car. Therefore, the Court finds that Mr. Kyle's status as a parolee on the day of the search played no role in the search. Nor did the United States argue that it does.

During the search, the officers found a loaded 9mm magazine with 12 rounds along with two suspected MDMA pills, a digital scale, and a THC vape pen in the driver's side door. The officers also found a loaded Glock 17 9mm pistol with 24 rounds under the driver's seat and a small bag of marijuana in the center console. After the search, officers went to the hotel room Mr. Kyle was visiting and spoke to two women there, who consented to a search of the room, which did not turn up anything illegal.

  C. **The Towing Policy**

The Westlake Police Department has a written policy for towing vehicles, which was admitted into evidence at the hearing. Section 502.5 of the policy provides that "[w]henever a person in charge or in control of a vehicle is arrested, it is the policy of this department to provide reasonable safekeeping by towing the arrestee's vehicle subject to the exceptions described below." It goes on to mandate towing

"whenever it is needed for the furtherance of an investigation or prosecution of the case . . . . For example, a vehicle shall be towed . . . if it would be in jeopardy of theft or damage if left at the scene in a high-crime area." Section 502.7 provides that "all vehicles impounded by the Westlake Police Department shall have an inventory conducted by an officer." This inventory "should be conducted at the site of the vehicle prior to towing."

In certain circumstances, the policy directs officers to consider leaving a vehicle at the scene instead of towing, so long as "left in a reasonably secured and safe condition." Such situations that may apply here involve those "where the vehicle was not used to further the offense for which the occupant was arrested or is not subject to forfeiture proceedings" and when "the vehicle otherwise does not need to be stored and the owner requests that it be left at the scene."

Notwithstanding his testimony that he frequently used this policy, the Court finds that Officer John Toth had to continually refer back to the text of the written policy when questioned about its content during his testimony, that he did not appear particularly familiar or fluent with the policy, and that his knowledge of and testimony about the policy came largely through leading questions or other prompting from counsel. His demeanor leads the Court to find that his reliance on the policy represents an *ex post* justification for the search that did not apply at the time. Indeed, when asked to state the reasons he decided to have Mr. Kyle's vehicle towed, Officer Toth testified twice that he did so based on the totality of the circumstances, including the outstanding warrants for Mr. Kyle's arrest, the bullet

5

hole in the hood of the car, and—significantly—the items that were recovered from Mr. Kyle's car during the search. To be clear, Officer Toth's testimony establishes, as a matter of fact, that he searched the vehicle before deciding to tow it.

## CONCLUSIONS OF LAW

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects," including vehicles, "against unreasonable searches and seizures." U.S. Const. amend. IV; *United States v. Jones*, 565 U.S. 400, 404 (2012). Warrantless searches of vehicles "are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).

### I. Probable Cause

One such exception permits an officer to search a vehicle without a warrant if probable cause supports the search. *United States v. Ross*, 456 U.S. 798, 809 (1982). Probable cause means reasonable grounds for belief the vehicle contains evidence of a crime, supported by less than prima facie proof but more than mere suspicion. *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). Put another way, probable cause exists where "there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Wright*, 16 F.3d 1429, 1437 (6th Cir. 1994) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). In determining whether probable cause exists, the Court does not look to events before or after the search or the subjective intent of the officers; instead, the Court considers

6

the objective facts known to the officers at the time of the search. *Smith v. Thornburg*, 136 F.3d 1070, 1075 (6th Cir. 1994).

### I.A. Probable Cause on the Facts

The evidence before the Court establishes that Officer John Toth saw Mr. Kyle in his car for about a minute, observed no criminal conduct there, and had no suspicion that anything unlawful occurred in the car. Further, his testimony, as well as the video evidence from the dashboard camera, shows that Mr. Kyle had exited his vehicle when Officer Toth arrived on the scene and ordered him to the ground. At this point, the only basis for a warrantless search of the car was Mr. Kyle's proximity to it—though he was about fifteen or twenty feet away and on the ground. Although Mr. Kyle smelled of marijuana, Officer Toth did not even suspect marijuana was in the car or observe any contraband or anything else unlawful in the car. These objective facts demonstrate that there is no "nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004). Mr. Kyle's mere proximity to his car falls far short of providing probable cause for a search of the vehicle on these facts.

One additional factual matter requires a brief mention. During cross-examination, defense counsel confronted Officer John Toth with the police report of the incident. That report states that Officer Toth conducted a "PC search of the vehicle," and Officer Toth confirmed that "PC" is shorthand for "probable cause." However, because Officer Toth also testified that his report is inaccurate in certain material respects, the Court did not consider the report in determining that the facts do not support probable cause as a basis for the search.

### I.B. Authorities

To support the search, the United States relies on various authorities, but each arises in the context of a traffic stop and, therefore, is factually distinguishable and inapplicable here. For example, the United States relies on *United States v. James*, 575 F. App'x 636 (6th Cir. 2014). There, officers attempted to stop a motorist, who led the officers on a chase before eventually stopping. When he exited the vehicle, officers detected the smell of marijuana on his person. Additionally, the defendant admitted to the officers that he had a gun and marijuana in his car. Based on the totality of these circumstances, the Sixth Circuit concluded that probable cause existed for a search of the vehicle. *Id.* at 640. *James* and its facts are typical of the cases on which the United States relies.

In contrast, Mr. Kyle was not driving the car at any time before or after Officer John Toth observed him. His car was parked, he did not engage in any traffic violations, and he did not admit to officers that he had any contraband in his car. Nor did Officer Toth, by his own admission, have any suspicion Mr. Kyle engaged in any illegal activity in the car. Also, as the Sixth Circuit noted in *James*, the smell of marijuana on someone's person alone does not provide probable cause for a search. *Id.* ("The odor on [the defendant's] person was not sufficient on its own to provide probable cause to search the vehicle."). On these facts, the Court determines that the United States failed to establish a fair probability that contraband would be found in Mr. Kyle's car, and there was not probable cause for the search.

## II. Inventory Exception

Another exception to the Fourth Amendment's warrant requirement—and the one on which the United States principally relies here—is the inventory exception. "[I]nventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v. Bertine*, 479 U.S. 367, 371 (1987) (citation omitted). "An inventory search is the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims of loss or damage." *Whren v. United States*, 517 U.S. 806, 811 n.1 (1996). Police may conduct an inventory search of an impounded vehicle without violating the Fourth Amendment. *United States v. Jackson*, 682 F.3d 448, 455 (6th Cir. 2012).

A valid inventory search "may not be undertaken 'for purposes of investigation,' and it must be conducted 'according to standard police procedures.'" *United States v. Smith*, 510 F.3d 641, 651 (6th Cir. 2007) (quoting *United States v. Lumpkin*, 159 F.3d 983, 987 (6th Cir. 1998)). Accordingly, the inventory exception applies only where officers follow "standardized criteria' or 'established routine' governing the scope of the inventory searches." *United States v. Alexander*, 954 F.3d 910, 915 (6th Cir. 2020) (quoting *Florida v. Wells*, 495 U.S. 1, 4 (1990)). However, a "general written inventory policy does not grant officers carte blanche when conducting a search[.]" *United States v. Jackson*, 682 F.3d 448, 455 (6th Cir. 2012) (citations omitted). Officers exercising their discretion to impound a vehicle must do so "according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *United States v. Kimes*, 246 F.3d 800, 805 (6th Cir.

9

2001) (quoting *Bertine*, 479 U.S. at 375–76). These standardized criteria and established routines ensure that the police do not use an inventory search as a "ruse for a general rummaging in order to discover incriminating evidence." *United States v. Hockenberry*, 730 F.3d 645, 659 (6th Cir. 2013) (quoting *Wells*, 495 U.S. at 4).

An inventory search is unconstitutional if "the evidence establishes that the 'police acted in bad faith or for the sole purpose of investigation' in conducting an inventory search." *Hockenberry*, 730 F.3d at 659 (quoting *United States v. Vite-Espinoza*, 342 F.3d 462, 470 (6th Cir. 2003)). In other words, officers cannot hide an investigative search under the pretext of an inventory search. *See id.*; *see also South Dakota v. Opperman*, 428 U.S. 364, 375–76 (1976). But "the mere fact that an officer suspects that contraband may be found in a vehicle does not invalidate an otherwise proper inventory search." *Smith*, 510 F.3d at 651.

**II.A. Pretext**

Defendant argues that the officers' purpose in searching his vehicle was investigatory and, therefore, the inventory search was pretextual. (ECF No. 25, PageID #122–28.) In response, the United States maintains that, even if the officers' intent in searching the vehicle was to locate contraband, Mr. Kyle was already under arrest at that point and the search was conducted pursuant to the Westlake Police Department's Tow Policy.

The evidence before the Court supports a finding that the inventory search of Mr. Kyle's vehicle was pretextual. The statements of the officers at the scene, captured on video, combined with Officer John Toth's testimony at the suppression hearing support this finding. On the dash camera footage, Officer Toth says that he

"just wants to look in the car real quick, make sure there is nothing in there. He smells like burnt and raw marijuana." Also, Officer Toth testified that he had no suspicion that Mr. Kyle may have done anything illegal in his car during the minute or so he saw Mr. Kyle in it. When Mr. Kyle objected to the warrantless search of his car and asked how the officers can lawfully search it, an officer responds, "because you went into the car." There is no assertion of probable cause.

Although the Court agrees with the United States that an officer need not specifically articulate or state an intention to invoke a towing policy before conducting an inventory search, the facts in this case show that the search was investigative. Suspicion that the car might have contraband will not invalidate an otherwise valid search conducted pursuant to a towing policy. *Smith*, 510 F.3d at 651. But the record demonstrates that Officer Toth made the decision to tow the car based, in part, on the items recovered in the search—demonstrating that the officers did not perform the search of the car pursuant to a towing or impoundment policy. Based on these facts, to say the officers conducted a valid inventory search would be wholly circular.

### II.B. Authorities

To defend the validity of the search under the inventory exception, the United States relies on several cases, each of which again arise in the context of traffic stops and are otherwise factually distinguishable. The Court discusses in turn the three primary cases on which the United States relies.

#### 1.

In *United States v. Snoddy*, 976 F.3d 630 (6th Cir. 2020), a highway patrol officer stopped a motorist for speeding and arrested him on outstanding warrants.

11

During a search of the car, to which the driver and sole occupant objected, the officer found two handguns, a set of scales, and approximately one pound of methamphetamine. On appeal from the district court's denial of the motion to suppress following a conditional plea, the Sixth Circuit rejected the driver's argument that the search was pretext for a warrantless investigative search in violation of the Fourth Amendment. *Id.* at 633. Because the impoundment of the car was reasonable, the officer "was going to have the car towed no matter what" regardless of the officer's subjective motivations and beliefs. *Id.* at 636.

Reliance on *Snoddy* to defend the search in this case suffers from two flaws. First, the United States fails to appreciate that the Sixth Circuit's discussion of the officer's subjective motivations and beliefs in *Snoddy* presupposes probable cause for the search in the first instance. In *Whren*, on which the Sixth Circuit relied in *Snoddy*, the Supreme Court held that an officer's intent is relevant for determining the purposes of a search only where reviewing "the validity of a search in the *absence* of probable cause." *Whren*, 517 U.S. at 811. Such is the case here because the Court already determined that the officers lacked probable cause to search Mr. Kyle's car. Therefore, the officers' statements and intentions may properly inform the Court's determination that the search was pretextual.

Second, the facts here materially differ, and the Sixth Circuit limited its holding to the specific facts at issue in *Snoddy*, where "the arrestee is the sole occupant of the car and the car would be left on the side of the road in the middle of the night." 976 F.3d at 636. In contrast, Mr. Kyle's car was parked in a hotel parking

12

lot on a Sunday morning. In *Snoddy*, the driver was arrested pursuant to a traffic stop; therefore, there was a clear nexus between the car and the evidence seized. Also, the trooper in *Snoddy* called for a tow of the vehicle before asking the driver for consent to search unlike here where the evidence shows that Officer Toth decided to tow the Audi based, in part, on the results of the search already conducted.

### 2.

In *United States v. Pryor*, 174 F. App'x 317 (6th Cir. 2006), police responded to an apartment complex after receiving an anonymous call that a man was driving around the complex and firing shots into the ground. On their arrival, the officers found the defendant standing next to his vehicle. They questioned him, determined he was intoxicated, and arrested him for public intoxication. Following his arrest, the officers decided, based on their departmental tow policy, that "they would have to impound Pryor's car because it was parked on private property and the property owner was not present to give permission to let the vehicle remain, and because there were no third parties present who could take the car and park it in a legal location." *Id.* at 319.

On appeal, the Sixth Circuit upheld the district court's determination that these facts gave the officers probable cause to arrest the defendant for public intoxication. *Id.* Further, the court held that the Fourth Amendment did not require probable cause for the search because the officers acted pursuant to their departmental tow policy. *Id.* at 320. In *Pryor*, the facts are sufficiently distinguishable from those here that reliance on it to justify the search of Mr. Kyle's car is unavailing. For one thing, the officers in *Pryor* had probable cause for an arrest

13

involving conduct with a nexus to the car itself. Unlike here, the officers did not base the decision to tow the vehicle on the results of the search itself.

### 3.

In *United States v. Kelly*, 827 F. App'x 538, 539 (6th Cir. 2020), the police conducted a traffic stop after running the license plate number and discovering that "the vehicle didn't have a record of insurance," in violation of a city ordinance and a State statute. Officers placed the defendant under arrest because he did not have a valid driver's license and impounded his vehicle, which was blocking an entrance to a gas station. An inventory search before towing turned up a loaded firearm underneath the front seat. Again, the facts in *Kelly* are distinguishable from those here. In addition to a nexus between the car and the traffic stop in *Kelly*, that case contained no evidence the inventory search was pretext for an investigatory search to discover incriminating evidence.

\*   \*   \*

The Court agrees that an officer's decision to impound a vehicle is not impermissible simply because alternatives to impoundment might exist. *Kimes*, 246 F.3d at 805. However, unlike in the cases on which the United States relies, the facts here show that Officer John Toth decided to tow the vehicle based, in part, on the items seized in the search. And the evidence establishes that the inventory search constitutes an *ex post* pretext to rationalize an otherwise unlawful search.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Suppress. ([ECF No. 19](#).)

**SO ORDERED.**

Dated: August 23, 2021

 

J. Philip Calabrese
United States District Judge
Northern District of Ohio